Belknap,
No. 5538.

CHARLES F. DOW & a.

*v.*

STATE.

Argued November 1, 1966.
Decided January 27, 1967.

*Upton, Sanders & Upton* ( *Mr. Gilbert Upton* orally ), for the plaintiffs.

*George S. Pappagianis*, Attorney General and *R. Peter Shapiro*, Assistant Attorney General ( *Mr. Shapiro* orally ), for the State.

WHEELER, J. Appeal from an award of $1,600 in an eminent domain proceeding whereby the State took on April 1, 1963 certain lands of the plaintiffs in connection with the construction of interstate highway 93 in New Hampton. Trial by jury with a view resulted in a verdict for the plaintiffs in the amount of $7,000.

During the course of the trial, the defendant excepted to certain rulings of the Court admitting evidence and allowing portions of the plaintiffs' argument. After verdict the defendant moved to set aside the verdict for the reasons ( 1 ) that it is excessive; ( 2 ) that it is contrary to and against the weight of the evidence; and ( 3 ) that the jury fell into plain mistake. The motion was denied and the defendant's exceptions were reserved and transferred by *Grimes*, J.

The parties agree that the State took in fee 5.6 acres of land and landlocked another 17.1 acres which the State concedes to be totally worthless after the taking. The chief issues in the case are whether it was error to permit the plaintiffs to introduce evidence of the quantity of gravel on the 5.6-acre piece taken by the State and the quantity of loam on the 17.1-acre landlocked piece, and whether it was error to admit evidence of the gross income from gravel operations by the plaintiffs for a period of eight years prior to the taking. If such evidence is competent, the question is raised as to what foundation must be laid to insure its admissibility so the trier of the facts will not reach an unconscionable verdict based on speculation.

The plaintiffs' evidence concerning mineral deposits on their land ( sand, gravel and loam ) prior to the taking tends to establish the following facts. The plaintiffs acquired title to the land in 1948. In 1955 they opened a sand and gravel pit on the 5.6-acre tract taken by the State. The pit was operated by others than the plaintiffs until it was taken by the State in 1963. During

this period plaintiffs realized a gross income of about $200 to $300 per year from the sale of gravel, except during the year 1957 when 72,000 yards of gravel were sold.

On the landlocked tract the plaintiffs had been growing vegetables for a number of years. The top soil in the area was classified by an expert as "Ondawa bottom" or a class one soil for agricultural use, and fairly scarce in the general area. Tests indicated that this loam extended to a depth of 12 to 18 inches throughout the entire tract with a probable minimum quantity of 22,425 yards. There was a substantial quantity of gravel and sand left on the tract taken by the State.

It was established that there were some twenty-five dealers in gravel and loam in the general area and that loam was very scarce. There was an active market in the area for both loam and gravel with a going sale price of one dollar and ten cents per yard respectively.

The defendant objected to the introduction of this evidence on the ground that the plaintiffs were endeavoring to use the unit rule approach in establishing the plaintiffs' damages. The plaintiffs contend that the only purpose for which this evidence was offered was to have the land appraised for the most profitable purpose, or advantageous use, to which it could be put at the time of the taking ( *Emmons* v. *Company*, 83 N. H. 181, 184 ) and to demonstrate the existence of a market for the product of that use. *Dover Housing Authority* v. *George*, 107 N. H. 202, 205.

An expert for the plaintiffs testified that the fair market value of the plaintiffs' property before the taking was $10,000 and that it had no value after the taking since the tract containing the loam was landlocked. In arriving at this figure the witness considered the value of the loam in place on the premises. The State's expert testified that the plaintiffs' property had a fair market value of $1,900 before taking and no value thereafter.

The parties concede that the classic formula for the determination of damages in a land condemnation case is stated in *Edgcomb Steel Co.* v. *State*, 100 N. H. 480, 486, in the following language: " The law has long been settled in this jurisdiction that in eminent domain proceedings the owner of land condemned is entitled to damages for the taking measured by the difference between the value of his land after the taking and what it would have been worth on the day of the taking if the taking had not occurred. " It is likewise settled law in this jurisdiction that the

plaintiffs were entitled to have their property valued at the most advantageous use to which it could be placed on the day it was condemned. *Roy* v. *State*, 104 N. H. 513, 516. It was not seriously disputed that the most advantageous use to which the plaintiffs' property could be put on the day of taking was in selling sand, gravel and loam therefrom.

The precise evidentiary question presented here has not heretofore been considered by this court. In an analogous situation where the State contended that the plaintiffs' experts arrived at their opinion of fair market value before and after the taking by dividing plaintiffs' property into imaginary lots, placed a value on each lot and then added up the separate values to arrive at the figure testified, the court stated if that was all they did the State's contention would be well taken, but this did not appear to be the situation as disclosed by the record. The court held that although the witnesses explained their testimony as to value by stating the number and value of the lots, their estimates as to the fair market value were not arrived at solely by adding up the value of each lot. *Parkinson* v. *State*, 104 N. H. 534, 536. The court further observed that "one may be suspicious there will be experts who will use one method that is not permissible and explain it by another way that is permissible. But the remedy is not to lay down any special circumscribing rules which exclude value testimony as Judge *Learned Hand* pointed out in *United States* v. *New York*, 165 F. 2d 526, 529 (2d Cir. 1948). The remedy is to allow full cross-examination and to carefully instruct the jury to determine the value of property as a whole unit 'and not add up what separate lots might bring and determine the value that way.'" *Parkinson* v. *State, supra*, 536.

"The rule ordinarily applicable, although there are certain circumstances in which it may not be applied, is that in determining the compensation in eminent domain proceedings the existence of valuable mineral deposits in the land taken constitutes an element which may be considered insofar as it influences the market value of the land . . . The rule has frequently been expressed, however, by the negative statement that the award may not be reached by separately evaluating the land and the deposits, since the latter, being only one element among many in determining the market value of the land, cannot be considered as an independent factor the value of which is to be added to the

value of the land. " 27 Am. Jur. 2d 91, 92; 4 Nichols, Eminent Domain, *p*. 413; Annot. 156 A.L.R. 1416; *Hollister* v. *Cox*, 131 Conn. 523, 524; *Reiter* v. *State Highway Comm.*, 177 Kan. 683; *State* v. *Horman*, 188 Minn. 252.

The plaintiffs concede that an expert may not multiply the number of cubic yards of mineral by the unit price and give the result of his computation as his estimate of the market value, but, as the plaintiffs contend, this does not mean that the lot price or the unit price of minerals cannot be used by the expert as a factor upon which he may base his opinion as to fair market value. We agree that with this limitation, and with proper safeguarding instructions from the court evidence of the value of mineral deposits in place is a proper factor to be considered by the jury in determining the damages based on the highest and best use of a condemned property. *Farr* v. *State Highway Board*, 123 Vt. 334, 337. See *Dover Housing Authority* v. *George*, 107 N. H. 202, 205.

" We adhere to the principle that the unit rule is not the measure of damage, but the use of pencil and paper and computation is not proof of impropriety. The amount and value of recoverable mineral deposits are not only proper but necessary elements to be considered in determining before and after value. " *Comstock* v. *Iowa State Highway Comm.*, ( Iowa ) 121 N. W. 2d 205, 214. A person buying a gravel bank would want to know the amount of gravel in place in determining the market value of the land. *State* v. *Mottman Merc. Co.*, 51 Wash. 2d 722, 728.

The plaintiffs' evidence established that since 1955 they had been selling gravel from the 5.6-acre tract taken by the State and that there was a good market for loam in the general locality during that period with a going price of one dollar per yard. With this showing it was not error to introduce evidence of gross income as a factor which an expert could consider in arriving at an opinion as to fair market value of the land. *Edgcomb Steel Co.* v. *State*, 100 N. H. 480, 485, *supra*; *United States* v. *Land in Dry Bed of Rosamond Lake*, 143 F. Supp. 314 ( D.S.D. Calif. 1956 ). *Cf. United States* v. *Rayno*, 136 F. 2d 376, 379 ( 1st Cir. 1943 ).

The evidence was admitted for the limited purpose of showing the existence of a demand. In receiving this evidence the Court cautioned the jury in the following language: The Court: " I want to make it plain before he answers, Mr. Foreman and Gentlemen, that he's not entitled to recover for loss of income or

for the prospective loss of income, that is, what income he might have lost in the future. What he's entitled to recover for is the difference between the fair market value of the property, if it was sold as a whole, just before the taking, and what he could get for it if he sold what he had left as a whole after the taking; and by listening to this evidence you're not to use this for the purpose of computing damages from the standpoint of loss of income because that's not a proper way to figure damages. " The Court correctly instructed the jury as to the law which they should apply in determining damages. Evidence concerning the volume of gravel sold was evidence of the existence of a market for gravel which bore upon the value of the property for the most advantageous use to which it might be put. *Edgcomb Steel Co.* v. *State*, 100 N. H. 480, 488.

Again in its instructions to the jury the Court cautioned them as to the proper rule to apply in determining the plaintiffs' damages and the limitations to be placed on certain evidence with respect to quantities of gravel and loam as follows: " I must go into this again because it was mentioned again in argument although I thought I instructed you pretty fully on this at the time the evidence was introduced. You do not measure the damages in this case by adding up the number of cubic yards of anything — loam, gravel, sand or fill, or whatever it is, and multiplying by what an individual unit would sell for on the market because that just isn't the test, and you're men of common sense and you know that nobody is going to come in and pay that much for a piece of land. It's something that somebody might take into consideration, and it's for you to decide whether they would or not, and it's for you to decide to what extent they would take that into consideration in determining what they would pay in money for this whole piece, the landlocked piece and the part that was actually taken, if they were going to buy it as a whole to use it for that purpose. "

To these instructions the State took no exception. In view of the amount of the verdict, there is no reason to suppose that the jury were misled or that they applied an improper rule in assessing plaintiffs' damages. Absent other factors to the contrary, it must be presumed that the jury understood and followed the instructions of the Court. The denial of the defendant's motion to set aside the verdict implies a finding by the Trial Court that the trial was fair.

Finally, we consider the State's exception to the exclusion of

the testimony of the State's expert as to the price per acre that gravel-bearing land was selling for on the date of the taking. The Court had previously excluded as hearsay, testimony by this witness with respect to prices paid for other tracts of gravel-bearing land. The question objected to by plaintiffs' counsel was as follows: "Q. Mr. Hickey, do you have an opinion as to what gravel-bearing land was selling for per acre, the range it would be selling for per acre on the date of the taking? . . . Mr. Upton: I object. The Court: Well, I suppose that's getting in by the back door what I won't let you get in through the front door. I suppose he can testify what he thinks the value of this piece of gravel-bearing land was worth, taking into consideration the information that he has of other sales and his experience. I don't think I'm going to let you put it in this way."

The question was not pursued by State's counsel in this form, but the witness was permitted to testify as to his opinion as to the fair market value of the plaintiffs' property before and after the taking. It was findable on the record that testimony by this witness concerning the going price per acre was also excluded as hearsay evidence concerning the sale price of other land. In this ruling we find no abuse of discretion.

The order is

*Exceptions overruled; judgment on the verdict.*

BLANDIN, J., sat at argument but took no part in the decision; the others concurred.