Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* City of Chester, Appellee.

Argued September 27, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, BLATT, DiSALLE and CRAIG. Judges ROGERS and MacPHAIL did not participate.

*Edward D. Werblun,* Assistant Attorney General, with him *William P. Culp,* Special Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General-Chief Counsel, and *Robert P. Kane,* Attorney General, for appellant.

*Peter J. Nolan,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 28, 1979:

In this eminent domain proceeding, the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) appeals a decision of the Court of Common Pleas of Delaware County confirming findings of fact and conclusions of law of a court appointed jury of view (Viewers).

A declaration of taking was filed by PennDOT in 1974 condemning 4.5 acres of 50-acre Crozer Park, a municipally owned park, located in the City of Chester, for the purpose of erecting access ramps to the Commodore Barry Bridge. The routine matter became complicated when PennDOT demolished a state built bridge located in the park in connection with the erection of the access ramps. This bridge was not included in the 1974 declaration of taking nor was a separate declaration of taking ever filed.

The City Engineer for the City of Chester testified to the before and after value of Crozer Park as a result

of the condemnation and indicated that damages were $939,000.00. This figure was adopted by the Viewers who specifically indicated that one of the elements of damage considered was the cost of replacement of the bridge. The Viewers heard testimony that the cost of replacement, updated from February, 1970 to September, 1975 was $874,361.52. In addition to the award of damages, the Viewers made the following specific findings:

1. The evidence produced at the hearing indicated that there was unity of use between the Finland Drive-Concord Avenue section of Crozer Park and the larger section of the Park.

2. From the evidence presented, it is determined that the bridge over I-95 was not closed on the date of the condemnation, August 16, 1974, and the testimony also indicated that the public used the bridge until it was demolished by the Condemnor.

3. The Condemnor's plans, on which the taking is based, do not show the demolition or elimination of the bridge over I-95, and therefore the cost of the replacement of the bridge was an element of the damages considered by the Jury of View.

Background facts involving the physical setup of Crozer Park are necessary for an understanding of the issues involved. U.S. Route I-95 intersects Crozer Park by virtue of an earlier condemnation with which we are not here concerned. As a result of the park excavation for the erection of I-95, the park was roughly segmented into three sections. A small section of the park lay south of I-95, a portion was locked between I-95 and a B & O Railroad right-of-way and the great mass of the park lay north of the B & O Railroad tracks.

In connection with the construction of I-95, the Commonwealth erected a bridge spanning I-95. This structure reconnected a local city street known as Finland Drive in the southern portion of the park with a bridge over the B & O Railroad tracts to permit pedestrians' and vehicles' passage directly from the southern to the northern portion of Crozer Park. In 1972 the City of Chester closed and barricaded the bridge spanning the B & O Railroad right-of-way. The bridge was badly deteriorated and quite dangerous. The City of Chester was unsuccessful at convincing the B & O Company that the B & O bridge should be repaired and restored. Thus, at the time of the condemnation in 1974 and when the matter was before the Viewers in 1977, the B & O bridge remained closed.

Two basic issues are before us for consideration and conclusion: (1) whether there was unity of use between the separate portions of Crozer Park; and (2) whether the Commonwealth is obligated to replace or furnish the cost of replacement for the elimination of the I-95 bridge.

The first issue involves the application of Section 605 of the Eminent Domain Code (Code)[1]. The question is whether there was unity of use between the non-contiguous tracts.[2]

Under the unity of use doctrine, separate properties are treated as one when they are so inseparably connected in the use to which they are applied that in-

---

[1] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-605.

[2] The unity of use concept is codified in Section 605 as follows:

Where all or a part of several contiguous tracts owned by one owner is condemned or a part of several non-contiguous tracts owned by one owner which are used together for a unified purpose is condemned, damages shall be assessed as if such tracts were one parcel.

jury to one will necessarily and permanently injure the other. *Werner v. Department of Highways,* 432 Pa. 280, 247 A.2d 444 (1968). "[I]mplicit in the definition of unity of use is the connotation that both parcels are so completely integrated, inseparable and interdependent so as to make the operation of one impossible without the operation of the other." *Sams v. Redevelopment Authority,* 431 Pa. 240, 243, 244 A.2d 779, 781 (1968).

The court below in determining that unity of use was applicable points to the action of the Commonwealth itself in providing a link between the southern and northern segments of the park by building the bridge spanning I-95. The court goes on to state that the Commonwealth's only witness was aware that students and residents on the south side of I-95 used the facilities on the north side, access to which was obtained via the I-95 bridge.

PennDOT counters that unity of use is not applicable by pointing out that the main portion of the park (north of the B & O) has in fact been isolated from the southern portion by reason of the City of Chester's own action, closing and barricading the bridge spanning the B & O Railroad. Thus, they argue, that a unified use was impossible. Furthermore, they urge that an acquisition of a small segment of this park will not affect usage of the remaining areas. Finally, they contend, and the testimony so confirms, that there are a variety of means of access to the park.

We are convinced that the record before us does not show an inseparable or interdependent usage, such that a taking of a small and isolated portion would affect the entire area of the park. The facts indicate that the non-contiguous sections are split by a four-lane superhighway and B & O Railroad tracks with over 40 acres of the park to the north of the B & O Railroad

and only a small segment south of I-95. Any link between these portions has been virtually totally severed by the closing of the B & O bridge.

We must also stress that evidence of a general nature that the separate portions were used for recreational purposes will not invoke the unity of use doctrine. Evidence must indicate a necessary interdependence of the various parts. Testimony that students and residents located on one side of the bridge use the recreational facilities on the other side does not indicate that the land in question was used as part of an inseparable whole.

The second issue revolves around the demolition of the bridge. We agree with the appellant that there is no obligation to replace the I-95 bridge. The City of Chester has maintained that the demolition of the bridge severed the unity of use of the park and resulted in the loss of a major means of access to the park.

We have already stated our position that no unity of use was shown between the widely separated parcels of Crozer Park and thus the demolition of the bridge did not destroy unity of use.

The contention that a means of access has been lost is without merit. The I-95 bridge led in effect for a number of years to a dead end. This argument is clearly a meritless means without an end.

Furthermore, testimony by the City of Chester's own witness clearly indicated that access to the park could be had in a variety of ways. The alleged loss of access which is remedied by entering the park in a variety of ways is not here compensable.[3]

---

[3] The issue of what property interest the City of Chester had in the state built bridge is not necessary to our determination of this matter.

Accordingly, we

ORDER

AND Now, this 28th day of March, 1979, the order of the Court of Common Pleas of Delaware County in the eminent domain proceeding at No. 9309 of 1974 is reversed and the matter is remanded to the Viewers for further proceedings consistent with this opinion with specific instructions that no unity of use exists between the separate portions of Crozer Park, and that the bridge is not a compensable element of damages.