**Powley v. Commonwealth**

*Joseph A. Klein,* for plaintiffs.
*Charles J. Bufalino Jr.,* for defendant.

LAVELLE, *P.J.,* March 13, 1991—This case comes before us in the unusual posture of objections to the report of the board of view. It raises the always difficult and perplexing problem of whether the condemnee is entitled to the benefit of the unity-of-use doctrine.

Procedurally, the lawsuit took the following route.

On August 30, 1982, the Commonwealth of Pennsylvania, Department of General Services, as part of the Lehigh Gorge Project, condemned an 11.1-acre tract of Kenneth E. Powley and Penelope Powley, his wife, in East Side Borough and Kidder Township along the Lehigh River in Carbon County.

Upon petition by Powleys, we appointed a board of viewers on August 24, 1987.

On May 18, 1988, after view and hearing, the board filed its report with the court awarding damages to the Powleys in the amount of $40,000.

On June 16, 1988, Powleys filed objections to the report of the board of view claiming that the board erred in concluding "that the unity-of-use doctrine does not apply to the three other non-contiguous properties owned by the appellants which were not described in the declaration of taking."

On June 1, and June 26, 1989, pursuant to the provisions of section 517 of the Eminent Domain Code, 26 P.S. §1-517, we held evidentiary hearings on the objections. From the evidence presented, we make the following

## FINDINGS OF FACT

On August 30, 1982, the Commonwealth condemned a vacant 11.1-acre tract located in the borough of East Side and the township of Kidder, in Carbon County. Powleys acquired the 11.1-acre tract on December 3, 1980, and were leasing it to Whitewater Challengers Inc. for use as a river rafting launching site.

Whitewater Challengers Inc. is a Pennsylvania corporation which provides not only guided whitewater rafting tours on the Lehigh River but also sells equipment and clothing, provides clinics, lodging facilities, souvenirs, photograph services and other recreational and commercial activities. Whitewater paid rent to the Powleys for the use of the condemned property, paid the employees of the rafting operation and paid for many of the improvements made on the properties used in the operations.

Powleys claim to be the sole stockholders of Whitewater. It is not clear from the record when they became the sole stockholders of Whitewater. The articles of incorporation show that George and Barbara Stefanyshyn and Kenneth Powley were the sole stockholders when it was incorporated in 1975. In July of 1979, the Stefanyshyns entered into an agreement with the Powleys to transfer their stock to the Powleys. Kenneth Powley testified that he became the sole stockholder of Whitewater Challengers Inc. "sometime prior to August of 1982" when George and Barbara Stefanyshyn transferred their stock to him. Then on cross-examination he admitted that the Stefanyshyn stock was actually transferred back to the corporation. He offered no documentary evidence to prove when

and if the stock was transferred back to the corporation prior to the date of condemnation. Although we cannot make a definitive finding that Powleys were the sole stockholders of Whitewater on the date of condemnation, we shall demonstrate in the discussion that this finding is irrelevant to our resolution of the sole issue in this case.

There are two noncontiguous properties that Powleys claim were integrated in use with the condemned property.

One of the noncontiguous properties is a 23-acre tract of land located in Lausanne Township, a distance of about 7.6 miles from the condemned property. This property was purchased by Powleys as individuals on December 31, 1979. It was used primarily as a campground and was improved by storage facilities, a store, administrative offices, classrooms, facilities for equipment, sales or rentals, vehicle repair shops, a mobile home, residence for the manager and other facilities for board and lodging and recreation.

The campgrounds provided parking for up to 800 automobiles and charter buses, as well as, camping facilities for those clients who required a location to stay overnight. The camp store sold boating equipment, clothing, souvenir items, as well as kayaks, canoes, paddles, helmets and lifejackets. The kitchen area was used to serve breakfast and dinner to rafters both before and after their trips and to provide box lunches. Lifejackets were issued to all rafters before they assembled and boarded buses which took them to the launch site. These vehicles were serviced at the on-site maintenance garage.

The second noncontiguous property is a 3.5-acre tract located in Kidder Township, a distance of at least 2.2 miles from the condemned property. This property was purchased by Powleys as individuals on July 19, 1979. It was improved by a log cabin with 3 toilets, two showers, two rooms and no indoor toilet facilities, as well as, an office and a storage garage. On the date of condemnation, the log cabin was used to provide housing for river guides who did not live locally.

All of the three tracts of land—when used in the rafting operation—were leased by Powleys to Whitewater, pursuant to an oral agreement. There were some activities conducted on the noncontiguous tracts which were not conducted by Whitewater and some of those activities were unrelated to river rafting. One of those unrelated activities was "climbing" which was advertised on a sign on the campground premises. Photographing people rafting and camping activities were also carried on. Fees were paid for these activities directly to Powleys.

## DISCUSSION

The sole issue we are called upon to decide here is whether the unity-of-use doctrine set forth in section 605 of the Eminent Domain Code requires the inclusion in the condemnation proceeding of the two noncontiguous parcels owned by Powleys. Upon a careful review of the law and the evidence, we conclude that the board of view properly found that the two noncontiguous parcels should not be included.

Section 605 of the Eminent Domain Code sets forth the statutory statement of the unity-of-use doctrine:

"Where all or a part of several contiguous tracts owned by one owner is condemned or a part of several noncontiguous tracts owned by one owner which are

used together for a unified purpose is condemned, damages shall be assessed as if such tracts were one parcel." Eminent Domain Code of June 22, 1964, 26 Pa.C.S. §1-605.

This section is followed by a comment of the Joint State Government Commission in which the legislature stated that the unity-of-use doctrine included in the code was merely a codification of the previously existing caselaw. See Comment, 226 Pa.C.S. §1-605; see also *Sandin v. PennDOT,* 124 Pa. Commw. 221, 555 A.2d 966, 968, note 5 (1989). Therefore the decision of the Pennsylvania Supreme Court in *Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 158 A.2d 541 (1960) and in other cases decided before 1964 are applicable and binding on the court in the instant proceedings.

The "unity-of-use" doctrine applies only to noncontiguous tracts which are so interconnected in the use to which they are applied, that the injury to one will permanently damage the other. *Werner v. Department of Highways,* 432 Pa. 280, 247 A.2d 444 (1968).

Powleys argue that we must apply the unity-of-use doctrine because they jointly owned all three tracts of land and the three tracts were all used in the water rafting business on the date of condemnation. Neither the law nor the record support their argument.

To obtain the benefit of the "unity-of-use" doctrine, there must be at least a close physical relationship between the separated parcels of land. *Snitzer,* Pa. Eminent Domain, §605-1, page 321. In *Sgarlat Estate v. Commonwealth, supra,* where the Commonwealth condemned a sand and gravel pit which condemnees claimed impacted on a noncontiguous property some three miles away used as a washery, the Supreme Court of Pennsylvania, in rejecting the condemnees unity-of-use claim, said at page 411:

"In the case before us the separation (of the tracts) is by three miles or more and the Forty Fort bit, where the washery is, could be used for other purposes than washing sand and gravel from the West Wyoming tract. The two parcels may form a business unit for the moment, but either could, with some adjustment, go on functioning without the other and appellant's primary thrust is more at business damage than at land damage."

Our research has uncovered no Pennsylvania cases applying the doctrine where the noncontiguous tracts are not in close physical proximity. In the instant case, the separated parcels are respectively more than seven and more than two miles from the condemned property. In our view, this lack of proximity, standing alone, precludes the applicability of the "unity-of-use" doctrine.

There is yet another reason for rejecting its use here. The Pennsylvania Supreme Court has held that in order to apply the unity-of-use doctrine it is necessary to demonstrate not only that the noncontiguous tracts are owned by one owner but also that they are used by "joint identical users." Sams v. Redevelopment Authority of New Kensington, 431 Pa. 240, 244 A.2d 779 (1968).

In *Sams, supra,* the Commonwealth condemned a parcel of land owned by two individuals and used by them as a scrap yard. They contended that they also owned another parcel of land located on the other side of the street being used as a foundry and that the unity-of-use doctrine was applicable. The Supreme Court refused to apply the doctrine because the foundry, although owned by the same owners as the scrap yard, was operated by a different legal entity corporation. The court held that it did not matter that the sole stock-

holders of the corporation were also the owners of the land.

In writing for the majority of the court, Justice Cohen pointed out:

"After thoroughly researching case authority in this Commonwealth, we are firmly convinced that recovery has never been permitted under the unity-of-use doctrine absent joint identical users of both parcels of land. In fact, the very concept of unity of use, in our view, dictates that there be identical users as well as identical ownership of the properties involved. It is difficult to conceive that a unity-of-use can exist when there are two separate and distinct legal entities operating each parcel of land. It is a contradiction in terms to speak of a unity-of-use where there is more than a single user, since implicit in the definition of unity-of-use is the connotation that both parcels are so completely integrated, inseparable and interdependent. so as to make the operation of one impossible without the operation of the other. Where there are separate users (completely different entities) of the parcels involved the use of both cannot be said to be so inseparable as to make them a unit for purposes of damages in a condemnation proceeding."

Here, the "users" of the three noncontiguous properties was Whitewater, a Pennsylvania corporation and a separate and distinct legal entity from the Powleys. The three parcels, therefore, were not owned and used by "joint identical users." The record is unclear as to whether Powleys were the sole shareholders of Whitewater on the date of condemnation. Even if they were the sole stockholders of Whitewater at the time of condemnation, *Sams, supra,* tells us we cannot disregard the fact that a corporate entity was using the properties for rafting.

For the foregoing reasons, we enter the following

ORDER OF COURT

And now, March 13, 1992, it is hereby ordered and decreed that the plaintiff's objections to the board of viewers' report be and are hereby dismissed.