## McConn *v.* Commonwealth, Department of Highways, Appellant.

Argued March 12, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Davis G. Yohe,* with him *Guy S. Mamolito,* for appellant.

*Francis H. Patrono,* with him *Robert D. Beck,* and *Patrono, Ceisler & Edwards,* for appellees.

OPINION BY MR. JUSTICE JONES, October 16, 1968:

The basic issue on this appeal is whether the grant of a new trial in this eminent domain proceeding on the ground that the jury's "verdict [was] against the weight of credible evidence and thus [was] inadequate" constituted an abuse of judicial discretion.

On April 6, 1961, the Commonwealth, for the purpose of constructing a limited access highway known as Interstate Route 70, condemned 4.643 acres of an 80.556 acre tract of land located in Donegal Township, Washington County, and owned by Richard J. McConn and Mary McConn, his wife. This tract of land was used for dairy farm purposes and improved with a dwelling house, two barns, a milk house and several corn cribs none of which were affected by the taking.

Prior to the taking about 12 acres of McConns' land abutted on Route 40, was reasonably level and fronted on the highway for a distance of about 800 feet. Part of the taking of the 4 plus acres was in this 12 acre tract.[1] In addition to the piece of land taken from the 12 acre tract, "several other pieces of this farm were condemned: (1) a small tract required for a channel

---

[1] Much of the emphasis in the court below was placed on the potentiality of the 12 acre tract for use for commercial purposes prior to the taking whereas, after the taking, that which remained of the 12 acre tract abutted on a highway to which access was limited thus rendering, in the opinion of the court below, this 12 acre tract "completely stripped of any roadside commercial value".

change, (2) a strip on the eastern side of the farm required to relocate the secondary road leading to Dutch Fork Lake, (3) a strip required to relocate National Highway Route 40, made necessary to provide access for the properties that formerly abutted the old Route 40. This new access road, in turn, severed plaintiffs' farm into two pieces for the first time, causing damage, also, by way of removal and relocation of fences."[2]

After efforts to effect an amicable settlement of the damages had failed, McConns petitioned for the appointment of a board of view and the Court of Common Pleas of Washington County appointed such a board. After hearing, the board made an award to McConns of $11,000 and from that award the Commonwealth appealed to the Court of Common Pleas of Washington County. In that court two jury trials took place; after the first trial the jury returned a verdict of $4860[3] and the court, on McConns' motion, set aside this verdict and granted a new trial;[4] after the second trial the jury returned a verdict of $6,350[5] and the court, on McConns' motion, again set aside the verdict and granted a new trial.[6] The propriety of that order is the basis of the instant appeal.[7]

Our analysis of the majority opinion in the court below indicates that the court was motivated to grant a new trial because it believed the verdict was against

---

[2] From the opinion of the court below.

[3] This verdict included damages of $4,000 plus detention damages of $860.

[4] The stated basis for such action was that the court deemed the verdict inadequate.

[5] This verdict included damages of $5,000 plus detention damages of $1,350.

[6] President Judge Sweet filed an opinion in dissent.

[7] An appeal was taken to the Superior Court and that Court, in a per curiam opinion, affirmed, by an equally divided vote, the order of the court below. We granted an allocatur.

the "weight of credible evidence" and, thus, inadequate, that the jury failed to accord to the land prior to the taking any commercial value and that the jury must have been influenced by the Commonwealth's expert witnesses who, in their testimony, ignored comparable values of land in the area.

In this field of the law certain principles, presently pertinent, are well settled: (1) in the exercise of its discretion, a court may set aside a verdict and grant a new trial if the verdict is excessive or inadequate (*Baker v. Commonwealth*, 401 Pa. 512, 165 A. 2d 243 (1960); *Mazur v. Commonwealth*, 390 Pa. 148, 134 A. 2d 669 (1957)); (2) to reverse the action of a court granting a new trial "it must clearly appear that the court acted capriciously, arbitrarily, improvidently or palpably abused its discretion" (*Baker*, supra, p. 514 and authorities therein cited); (3) in passing upon the propriety of the grant of a new trial, all of the evidence must be taken into consideration (*Baker*, supra, p. 515; *Ferruzza v. Pittsburgh*, 394 Pa. 70, 145 A. 2d 706 (1958)); (4) "The credibility of the oral testimony which was concerned with the fair market value of the property was peculiarly for the jury to appraise and not for the court" (*Springer v. Allegheny County*, 401 Pa. 557, 560, 165 A. 2d 383 (1960)); (5) in passing upon the adequacy or inadequacy of the verdict, the award of the board of view, while a circumstance to be considered, is not controlling (*Chiorazzi v. Commonwealth*, 411 Pa. 397, 400, 192 A. 2d 400 (1963); *Schuster v. Pennsylvania Turnpike Commission*, 395 Pa. 441, 149 A. 2d 447 (1959)).

From our independent review of the instant record and, particularly, of the reasons assigned by the court below for its action we are satisfied that the grant of a new trial was not warranted and did constitute an abuse of judicial discretion.

The first reason assigned by the court was that the verdict was against the "Weight of *credible* evidence".[8] This stated reason clearly indicates that the court took upon itself the determination of the *credibility* of the witnesses and placed its imprimatur of credibility upon McConns' expert witnesses and deemed not credible the Commonwealth's expert witnesses. *Springer,* supra, is particularly apposite to the case at bar. In *Springer,* one of the assigned reasons for the grant of a new trial was identical with the first reason assigned by the court below in this case, i.e., the verdict was against the weight of the credible evidence. In *Springer* this Court, unanimous in reversing an order granting a new trial, stated (p. 560): "The lower court's assumption that the verdict was against the weight of the *credible* evidence transgressed the bounds of the judicial function. The *credibility* of the oral testimony, which was concerned with the fair market value of the property, was peculiarly for the jury to appraise and not for the court. Nor can it properly be said that the verdict was against the weight of the evidence. The value of the land appropriated was the only substantial issue that the jury had to resolve. There was no dispute as to the extent of the property taken, nor its location, condition, topographical characteristics or the plaintiff's right to recover its fair worth. In arriving at a just determination of the fair market value, the jury had as criteria the customarily widely disparate opinions of the real estate experts who testified for the respective sides. It was the province of the jury to weigh the credibility of the valuation witnesses' testimony and to determine what the land taken was fairly worth at the time of the condemnation. The jurors had a right to, and undoubtedly did, bring to bear, in appraising the expert testimony, what

---

[8] Emphasis added.

they had perceived with respect to the property at the time they formally viewed it for trial purposes and further, exercised their own good common sense. To overthrow the verdict on the ground that it was against the weight of the evidence would, in the light of the record, amount to a judicial usurpation of the jury's province." When the court below in this case, as did the court below in *Springer*, took upon itself the determination of the witnesses' credibility it went beyond its judicial function and its conclusion that the instant verdict was against the weight of the *credible* evidence did not justify setting aside the instant verdict.

The second reason assigned by the court for the grant of a new trial was that the jury had failed to accord to the land, prior to taking, any commercial value. In its opinion the majority of the court below stated: "For even the Commonwealth experts testified that the sloping 12 acre tract which abutted on the old National Highway had commercial value before the condemnation." Our review of the record does not lend support to this statement. One Commonwealth expert, G. P. Amanti, did testify that the portion of McConns' land which fronted on the old highway had *potential* commercial value but he considered that only 5, not 12, acres had such potential value; moreover, he testified that the demand for commercial property on this stretch of highway was not great and that the "potential commercial value" which existed along the old Route 40 prior to the taking still existed, after the taking, along the new Route 40 and the Dutch Fork Lake Road. The other Commonwealth expert, G. H. Fetherlin, attributed *potential* commercial value to only 4½, not 12, acres and he agreed with Mr. Amanti that the demand for commercial property along this stretch was not great and that that portion of Mc-

Conns' property which remained did have, to some extent, potential commercial value. The jury may well have accepted, and probably did, the testimony of these two witnesses who attributed almost minimal commercial value to the property; however, such was the province of the jury and it was for them to believe or disbelieve the testimony of these witnesses. The *assumption* by the court below that the jury did not give consideration to the question of the commercial value prior to the taking finds no warrant on this record.

The third and last reason assigned by the court was that the Commonwealth's expert witnesses had ignored comparable sales of land in the area and, in some manner, thereby misled the jury. In the first place, the court permitted these witnesses to testify; in so doing, the qualification or disqualification of these witnesses was for the court to determine and, if the court believed that the lack of knowledge of comparable sales rendered valueless their prospective testimony, the court should not have permitted them to testify. In the second place, the question of the weight to be accorded the testimony of the Commonwealth witnesses was for the jury and, in determining such weight, we cannot assume that the jury did not take into consideration their knowledge or lack of knowledge of sales of comparable land in the area. In addition, the jury may well have considered the sales in the area unreliable by reason of the times of such sales prior to the taking or the distance of the various tracts of land sold from McConns' land. We cannot assume, as the court below did, that the jury did not take into consideration comparable sales; to do so would constitute pure speculation and conjecture.

The disparity between the award of $11,000 made by the board and the jury verdict totalling $6,350, the latter being approximately 57% of the former, is not such as per se would justify the grant of a new trial.

We are satisfied from a study of this record that the verdict as rendered was not so evidentiarily unrealistic or inadequate on this record as to justify the grant of a new trial. While in no sense controlling, the fact is that two juries, after hearing all the evidence, have chosen to accept the Commonwealth's rather than the McConns' version of the damages actually suffered. Certainly, the reasons assigned by the court for the award of a new trial are not sufficient in the law to set aside this verdict. The action of the court below in granting a new trial constituted an abuse of judicial discretion and must be reversed.

Order reversed. Each party to pay own costs.

---

OPINION BY MR. CHIEF JUSTICE BELL, DISSENTING IN PART AND CONCURRING IN THE RESULT:

I concur in the result but very strongly disagree with the Majority's statement that the *credibility* of a witness is *solely* for the jury and *never* for the Court. For this proposition, the Majority rely upon *Springer v. Allegheny Co.*, 401 Pa. 557, 560, 165 A. 2d 383. In the *Springer* case, no authority was cited for such a statement, and it is contrary to almost all human and judicial experience,* and should certainly be instantly overruled.

In many cases, how is it possible for a trial Judge to say that a verdict was against the weight of the evidence, without taking into consideration—as the Court consciously or unconsciously does—the credibility of the witnesses? In many cases, how can an ap-

---

* A *deduction or a conclusion* made from the evidence by a trial Judge or a Chancellor, or even by a jury, is not the equivalent of a "finding of fact," although sometimes erroneously so called, and is not entitled to the same weight and unchallengeability as a true finding of fact. *Watt Estate*, 409 Pa. 44, 50, 185 A. 2d 781; *Selheimer v. Manganese Corp.*, 423 Pa. 563, 581, 224 A. 2d 634.

pellate Court reverse the grant of a new trial on the ground that the lower Court *acted capriciously, arbitrarily, or palpably abused its discretion* without taking into consideration—not just the number of witnesses, pro and con, and not just their relationship or interest, but the credibility of the witnesses? Springer's aforesaid "dicta" statement of the law on this point is, we repeat, so contrary to all judicial experience that it should be immediately repudiated and overruled.

The credibility of every witness is undoubtedly *primarily* for the jury. Nevertheless it is within the province of a trial Judge who sees and hears the witnesses in a civil case, in passing upon a motion for a new trial based upon the weight of the evidence or the capriciousness of the verdict, to take into consideration the credibility of a witness *in order to prevent a miscarriage of Justice.* We must take judicial notice of the fact, which is well known by nearly every trial Judge, that *this question of credibility* is frequently—consciously or unconsciously—taken into consideration by every trial Judge, and sometimes by an appellate Court, when a witness's testimony *is unworthy of belief* because it is so contradictory, or so conflicting, or so uncertain or so ambiguous, or so inadequate or unconvincing, or where it appears from the record itself to be absolutely or almost impossible, or where it does not meet a required standard of proof (for example, "fraud" or "clear and convincing evidence" or "reasonable doubt" or "clearly, plainly and palpably," or "clear, precise and convincing"). Cf. *Wylie v. Powaski,* 422 Pa. 285, 220 A. 2d 842; *Kiser v. Schlosser,* 389 Pa. 131, 132 A. 2d 344; *Karcesky v. Laria,* 382 Pa. 227, 234, 114 A. 2d 150; *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864; *Aliquippa National Bank v. Harvey,* 340 Pa. 223, 232, 16 A. 2d 409; *Getz v. Balliet,* 431 Pa. 441, 246 A. 2d 108.

In *Wylie v. Powaski,* 422 Pa., supra, the Court approvingly said (pages 286-287) : "The trial judge in this case, . . . stated: 'This Court realizes that it is not the province of the Court to resolve conflicts in testimony. This is the particular duty of the jury, but it is the duty of this Court to weigh the evidence and the law and, if the jury disregards the *credible**  evidence and does not apply the law properly, then this Court must grant a new trial. . . .' "

In *Kiser v. Schlosser,* 389 Pa., supra, the Court said (page 133) : "True it is that the assaying of the credibility of witnesses and the resolving of conflicts in their testimony are for the jury. But it is equally true that the trial judge may not hide behind the jury's verdict; he has a duty to grant a new trial when he is convinced that the judicial process has resulted in the working of an injustice upon any of the parties."

In *Karcesky v. Laria,* 382 Pa., supra, the Court said (page 234) : "Moreover, it is important to remember that neither a jury nor a judge who sees and hears the witnesses have to believe everything or indeed anything that a plaintiff (or a defendant) or his doctor, or his other witnesses say, even though their testimony is uncontradicted."

In *Bohner v. Eastern Express, Inc.,* 405 Pa., supra, the Court said (page 471) : "We agree with the lower Court that from several of appellant's arguments it would appear that he does not know that the test for judgment n.o.v. and for a new trial are very different, and he is likewise apparently unaware of the inherent power, function and duty of a trial Court in considering a motion for a new trial.

"With respect to a new trial, '[w]here a trial Judge or Court sees and hears the witnesses, it has not only

---

* Italics, ours.

an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice [citing numerous recent cases] . . .

" 'Moreover, in such circumstances, namely, where the jury's verdict is capricious or against the weight of the evidence or results in a miscarriage of justice, it should not be allowed to stand, no matter how many new trials must be granted in the interest of justice: Elia v. Olszewski, 368 Pa., supra, and Maloy v. Rosenbaum Co., 260 Pa., supra': Clewell v. Pummer, 388 Pa. 592, 598, 599, 131 A. 2d 375. See to the same effect: Sherman v. Manufacturers Light and Heat Company, 389 Pa. 61, 68, 132 A. 2d 255; Greco v. 7-Up Bottling Company, 401 Pa. 434, 165 A. 2d 5; Hartigan v. Clark, 389 Pa. 283, 288, 289, 133 A. 2d 181; Lupi v. Keenan, 396 Pa. 6, 8, 151 A. 2d 447; Coward v. Ruckert, 381 Pa. 388, 393, 113 A. 2d 287; Frank v. Losier & Co., Inc., 361 Pa. 272, 276, 64 A. 2d 829."

In *Sarachman v. Avery*, 419 Pa. 330, 214 A. 2d 247, the Court said (page 333): "The ordering of a new trial by the court below was in full accordance with the criterion laid down by this Court in Clewell v. Pummer, 388 Pa. 592, where Chief Justice Bell said: 'Where a trial Judge or Court sees and hears the witnesses, it has not only an inherent, fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice . . . In such a case we will not reverse, unless there is a clear abuse of discretion or an error of law which necessarily controlled the grant of a new trial.' "

Moreover, in *Frisina v. Stanley*, 409 Pa. 5, 185 A. 2d 580, the Court said (page 6): "The lower Court

awarded a new trial saying '. . . in the interests of justice, we believe that a new trial should be granted for the reason that the verdict was against the weight of the evidence.' "

For these reasons, I disagree with the Majority's statement of the law on this point; however, I concur in the reversal because I believe the grant of a new trial was a clear abuse of discretion.

Mr. Justice MUSMANNO and Mr. Justice O'BRIEN join in this Opinion.