## Morrissey *v.* Commonwealth, Department of Highways, Appellant.

Argued May 4, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Alexander V. Sarcione,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellant.

*Louis F. Floge,* with him *Michael Sklaroff,* and *Schnader, Harrison, Segal & Lewis,* for appellees.

OPINION BY MR. JUSTICE JONES, October 9, 1970:

This is an appeal in an eminent domain proceeding from an order dismissing the Commonwealth's motion for a new trial, sustaining the verdict of the jury and entering judgment thereon. The underlying facts in the condemnation case have already been discussed at length in our earlier opinion in *Morrissey v. Dep't. of Hwys.,* 424 Pa. 87, 89-90, 225 A. 2d 895, 896 (1967), and need not be reiterated. In *Morrissey,* we reversed the entry of judgment on the verdict and mandated a new trial. Essentially we are concerned with the sequence of events that have transpired in the proceedings below following our ruling that now lead to this second appeal.

In accordance with the opinion in *Morrissey,* a new trial was held, resulting in a jury verdict on October 19, 1967, for condemnees in the amount of $99,400, consisting of severance damages in the sum of $70,000 plus $29,400 detention damages. A second judge heard the Commonwealth's argument in support of its motion for a new trial on August 8, 1968, and the aforementioned order denying the motion was entered on November 7, 1969. This appeal followed.

Several reasons are advanced by the Commonwealth as justification for a new trial: (1) the verdict was

against the evidence, the weight of the evidence and the law; (2) the verdict was excessive; (3) the trial judge erred in denying two of the Commonwealth's points for charge; (4) the trial judge erred in his failure to withdraw a juror and declare a mistrial after it was discovered that the forelady of the jury had a conversation with one of appellees' witnesses; and (5) the trial judge erred in not correcting his charge sufficiently so as to avoid confusion in respect to a view being evidentiary. The additional facts necessary for a complete understanding of these issues will be developed herein.

In respect to the first contention, the Commonwealth does not deny that the appellees-condemnees are entitled to a verdict in their favor since the only matter for the jury to determine was the amount of damages. *Sterner v. Commonwealth*, 325 Pa. 326, 190 A. 891 (1937). Insofar as it is argued the extent of damages was exaggerated, *i.e.*, excessive, and that the charge misled the jury into a consideration of improper items of damages, these issues will be discussed *infra*. However, it is also suggested that the charge did not give a "balanced review of the testimony." Besides our belief that the charge was fair and impartial, we note that, despite the trial judge's request for points of correction, no disagreement whatsoever was voiced by the Commonwealth to the content of the trial judge's narration of the evidence presented. As we indicated in *Lobalzo v. Varoli*, 422 Pa. 5, 220 A. 2d 634 (1966), a new trial should not be granted based on general allegations of prejudice in the charge when any such prejudice could have been promptly eliminated by an indication of disagreement on the part of counsel. This contention is singularly without merit.

Secondly, we must consider whether the verdict was excessive. It must be remembered that while $99,400

was the jury's figure for .673 of an acre, $70,000 of that amount constituted property damages. As might be expected, the valuation opinions given by the real estate appraisers for each party were conflicting: the Commonwealth's witnesses estimated the property damages to be $23,000 and $25,000 while appellees' witnesses estimated damages of $120,000 and $137,250.[1] It is helpful to remember the amounts in the past proceedings: (1) the board of view had awarded property damages of $50,000 and detention damages of $11,700; (2) the jury in the first trial found a verdict in the amount of $28,000 plus $8,400 detention damages. Besides disparaging the operational loss occasioned appellees' business as minimal,[2] the principal support for this contention is the disparity between this sum and the amount of the first jury and the board of view as well as the opinion of the Commonwealth's experts.

We have indicated many times that the discrepancy in valuation between various experts is properly a factor for the jury's consideration. *Poulos v. Commonwealth,* 438 Pa. 442, 266 A. 2d 100 (1970) ; *McConn v. Com., Dep't of Hwys.,* 431 Pa. 574, 246 A. 2d 677 (1968) ; *Morrissey v. Dep't of Hwys.,* 424 Pa. 87, 225 A. 2d 895 (1967) ; *Frontage, Inc. v. Allegheny County,*

---

[1] Their respective valuations of the property damages were as follows:

| Witnesses for Appellees | Before Value | After Value | Damages |
|---|---|---|---|
| Frank E. Mitchell | $1,030,500 | $ 910,500 | $ 120,000 |
| John L. McIlhenny | 1,119,563 | 982,313 | 137,250 |
| *Witnesses for Commonwealth* | | | |
| Bernard C. Meltzer | 1,018,700 | 995,700 | 23,000 |
| Walter A. McClatchy | 850,000 | 825,000 | 25,000 |

[2] Mr. Lynn, appellees' yard foreman, had testified that while appellees had access to Carwithan Avenue, which access was now precluded by the condemnation, that passage had only been utilized "occasionally" and not "regularly." There was also conflicting testimony as to the extent of rearrangement of the yard necessitated by the taking.

413 Pa. 31, 195 A. 2d 515 (1963); *Chiorazzi v. Commonwealth*, 411 Pa. 397, 192 A. 2d 400 (1963); *Springer v. Allegheny County*, 401 Pa. 557, 165 A. 2d 383 (1960). Similarly, we have noted that while the board of view award is an important consideration, it is not controlling; and a new trial based solely on the disparity of the amount between the board of view and the jury is not warranted. *Poulos v. Commonwealth*, 438 Pa. 442, 266 A. 2d 100 (1970); *McConn v. Com., Dep't of Hwys.*, 431 Pa. 574, 246 A. 2d 677 (1968); *Shotts v. Turnpike Comm'n.*, 431 Pa. 83, 243 A. 2d 326 (1968); *Hoffman v. Commonwealth*, 422 Pa. 144, 221 A. 2d 315 (1966); *Snyder v. Commonwealth*, 412 Pa. 15, 192 A. 2d 650 (1963); *Chiorazzi v. Commonwealth*, 411 Pa. 397, 192 A. 2d 400 (1963). Finally, the difference in jury verdicts should not justify a new trial. To order a new trial as we previously did due to certain errors and now circumscribe the second jury's verdict within the confines of the first jury's amount would be quite illogical. What we said in *Brown & Vaughn Dev. Co. v. Commonwealth*, 393 Pa. 589, 598, 143 A. 2d 815, 820 (1958), in denying a new trial on the ground of excessiveness of the verdict is equally applicable here: "There is no assurance that another venture into the assizes may not result in an even heavier reverse [for the Commonwealth] . . . . The [appellee] is satisfied with that amount and the Commonwealth should not be content to pay less than what the facts, fortified by the law in the matter, prove to be just and fair compensation."

The Commonwealth's first requested point for charge revolves about the extent of damages caused by the loss of access to Carwithan Avenue. As appellees' yard foreman had testified that this access was not regularly used, one of the Commonwealth's requested points for charge was: "I charge you that Carwithan Street was legally opened on the City Plan,

but it is for you to determine from all the testimony regarding accessibility and the physical facts and circumstances relating to Carwithan Street, what value, if any, or damages, if any, were suffered by the Plaintiffs as a result of this taking." This point was refused. In the former appeal of this case, we took great pains to point out: "Carwithan Avenue was not a 'paper street' but a legally opened street and, except for lack of grading and paving, it occupied the same status as any other legally opened street. To such street condemnees had the *right* of access even though, in fact, such street, because of its lack of grading and paving, was not readily usable. The references to such street as a 'paper street' may well prejudice condemnees." 424 Pa. at 95, 225 A. 2d at 899. The spirit of this language indicates that damages for non-access, although possibly slight in the jury's mind, were acceptable.

Instead of the requested charge, the trial judge substantially incorporated our language cited above and added: "Under the evidence you may find that the taking of this right of access, even though it may not have been regularly used, resulted in damage to the property of plaintiffs in addition to the taking of the land itself." Besides reflecting our former opinion, this charge appears to develop the very notion the Commonwealth sought to convey in its requested point. There is no error.

One of appellees' expert witnesses testified that the condemnation reduced the possibility of erecting a gasoline station which he opined was the best use of the corner of appellees' property at the intersection of Frankford and Carwithan Avenues, even though the then existing zoning prohibited such use. The trial judge denied another of the Commonwealth's requested points: "The Commonwealth requests the Court to charge the jury that on November 3, 1960 approximate-

ly seventeen (17) acres of the plaintiffs' property were zoned 'A' Commercial. 'A' Commercial does not allow the erection or use of the land for a gasoline station unless a permit is granted by the Zoning Board of Adjustment." However, in his charge the trial judge stated: "On September [*sic*] 3, 1960, the date of the taking, approximately 17 acres of plaintiffs' property were zoned A Commercial. The Ordinance provides that A Commercial does not allow the erection or use of the land for a gasoline service station unless a permit is granted by the Zoning Board of Adjustment." Whatever error there was in refusing the requested point was properly cured by the inclusion of this substantially identical language. *Duffy v. Nat'l Janitorial Services, Inc.*, 429 Pa. 334, 338, 240 A. 2d 527, 529 (1968).

At the close of appellees' testimony, a short recess was taken. As the last witness, a Mr. McIlhenny, left the stand, the forelady openly asked, "Mr. McIlhenny, do you have a son who goes to Temple University?" This was brought to the attention of the court and counsel and a sidebar discussion followed. It was agreed among counsel as well as the trial judge that the forelady be excused and replaced by an alternate juror. This was done and the trial continued after the judge cautioned the remaining jurors against any repeated occurrences. The Commonwealth now contends that such prejudice was engendered as to require the judge to withdraw a juror and declare a mistrial. For several reasons we find there to be no error.

In the first place, the Commonwealth's reliance on *Schankweiler v. Pennsylvania Light Company*, 275 Pa. 50, 118 A. 562 (1922), is misplaced. While a new trial was granted due to a juror's expression to a witness, "I admire your way of doing business," several factors there involved are not now presented: (1) there was an expression of sympathy; (2) the juror was not removed; and (3) a motion by counsel to withdraw

a juror was refused.    Secondly, we have said: " 'It is well-settled that the discretion of the trial judge to decide whether a juror should be withdrawn is broad.' [Citation omitted].    It depends largely upon the atmosphere of the trial and the circumstances." *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 423-24, 97 A. 2d 816 (1953).    Thirdly, this argument is precluded by the Commonwealth's silence at trial. *Cohen v. Lancaster Redev. Auth.*, 425 Pa. 441, 229 A. 2d 744 (1967).    In *Cohen*, a juror had an equally innocuous conversation in the hall, following an adjournment, with an officer of the condemnor.    With the agreement of counsel, the trial was allowed to proceed to a verdict.    On appeal we said: "Having known of the possible disqualification of a juror and gambled on the verdict or any result which might follow, appellant cannot now complain: [Citation omitted]." 425 Pa. at 443, 229 A. 2d at 745.    Accordingly, we find there to be no error.

Lastly, the Commonwealth suggests the trial judge erred in not correcting his charge sufficiently so as to avoid confusion in respect to a view being evidentiary. After the jury was empaneled and sworn, but before any testimony was received, a view of appellees' premises was conducted.    In his charge to the jury concerning the view, the trial judge stated: "It was never intended that the view of the Jury should be substituted for the evidence and that they should make up their verdict from the view in disregard of the evidence." However, the judge was later corrected by appellees as to the evidentiary value of a view.[3]    Realizing his

---

[3] The Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, art. VII, §703, as amended, 26 P.S. §1-703 (Supp. 1970) provides: "Either party may, as a matter of right, have the jury . . . view the property involved, . . . and the view shall be evidentiary." Although this taking occurred November 3, 1960, the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L.

mistaken impression of the law, the judge then charged as follows: "Well, Ladies, as it has been called to my attention that the law as I stated it to you in reading from an Opinion of the Supreme Court is not the law of today with respect to your view of the premises, accordingly, I state that the Act of Assembly provides that the view shall be evidentiary. . . . I would say the view was made and what you observed when you made your view of the property may be considered by you as evidence. The view, under the Statute, shall be evidentiary or evidential."

We have often reiterated the principle laid down in *Hisak v. Lehigh Valley Transit Co.*, 360 Pa. 1, 6, 59 A. 2d 900, (1948) : "Where an erroneous instruction consists of a palpable misstatement of the law, it is not cured by a conflicting or contradictory one which correctly states the law on the point involved, for the jury, assuming, as is their duty, that the instructions are all correct, may as readily have followed the incorrect as the correct one and it is impossible to know which they accepted [citations omitted]." *Accord, Richmond v. A. F. of L. Medical Service Plan of Philadelphia*, 421 Pa. 269, 218 A. 2d 303 (1966) ; *Pedretti v. Pgh. Railways Co.*, 417 Pa. 581, 209 A. 2d 289 (1965) ; *Lieberman v. P T C*, 410 Pa. 179, 188 A. 2d 719 (1963) ; *Stegmuller v. Davis*, 408 Pa. 267, 182 A. 2d 745 (1962). However, none of these cases involved an *express* correction by the trial judge of his earlier, erroneous instruction. In *Black v. A. E. Troutman Co.*, 385 Pa. 138, 141, 122 A. 2d 201, 202 (1956), this Court stated: "As plaintiffs contend, an erroneous statement of the

84, art. III, §302, 26 P.S. §1-302 (Supp. 1970) provides: "The provisions of Articles V and VII shall also apply to all steps taken subsequent to the effective date of this act in all condemnation proceedings in which the condemnation was effected prior to the effective date of this act." Thus, there is no doubt that this view was to be regarded as evidentiary.

law is not cured by a conflicting one which correctly states the law, and may be the basis for reversal; but this is so only if the correction is not made clear to the jury. If, as here, the court has distinctly corrected the error so as to leave no doubt as to the law to be applied, we will not reverse: Bender v. Welsh, 344 Pa. 392, 398, 25 A. 2d 182; Goldberg v. Philadelphia Rapid Transit Co., 299 Pa. 79, 84, 85, 149 A. 104." We are satisfied that the trial judge's charge, read as a whole, was fair, reasonable and proper.

Judgment affirmed.