Richard Edwards and Dolores Edwards, Owners; Richard Edwards, Sr., Richard Edwards, Jr. and John Edwards, Partners, d/b/a Edwards Brothers Packing Company, Appellants, v. Department of Environmental Resources, Appellee.

Argued April 1, 1974, before President Judge BOW-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Joseph A. Murphy,* with him *William J. Dempsey*
and *Lenahan, Dempsey & McDonald,* for appellants.

*Andrew Hailstone,* with him *James E. O'Connell*
and *Warren, Henkelman, McMenamin & Kreder,* for
appellee.

OPINION BY JUDGE CRUMLISH, JR., July 11, 1974:
This is an appeal by Richard Edwards, Sr. and
Dolores Edwards, his wife (condemnees), from a judg-
ment entered in the Court of Common Pleas of Lacka-

wanna County awarding condemnees $72,000 in damages for their fee interest in an eighty acre tract of farm land and buildings condemned by the then Department of Forests and Waters under the authority of the Project 70 Land Acquisition and Borrowing Act, Act of June 22, 1964, Spec. Sess., P. L. 131, 72 P.S. §3946.1 et seq. The award increased by $8,000 the amount of damages allocated by the trial judge sitting without a jury to this interest, and confirmed awards to Richard Edwards, Sr., Richard Edwards, Jr., and John Edwards, partners, d/b/a Edwards Brothers Packing Co., of $70,800 for machinery and equipment taken, and $9,500 for a bonus lease of a slaughterhouse operation conducted on four acres of the land condemned. The lower court also confirmed an award of $20,000 to David Jack as the fair market value of a "license" granted him by condemnees to strip what was estimated to be 186,000 cubic yards of topsoil from an eight acre portion of the condemnees' farm over a residual period of four years, with a royalty of $2.00 per truck load.[1]

Condemnees' principal contention, upon appealing to this Court for a new trial, is that the condemnor's valuation experts as well as the court below erred in failing "to consider the condemnees' interest in the topsoil contract with David Jack in arriving at (their) opinion of market value." Stated differently, may the trier of fact consider as a separate element of damages for the purpose of determining fair market value in an eminent domain proceeding the anticipated profits lost to the condemnee by the condemnation's cancellation of a valuable contract for the removal of topsoil from

---

[1] The validity of these latter awards are questions which are not before this Court inasmuch as only condemnees filed exceptions to or appealed from the trial court's award, and the briefs filed with this Court do not raise either substantive or procedural challenges relative to these judgments.

his land? The simple answer to this is that it would have been improper for either the valuation experts or the court to compute as a separate element of damages the mineral value of land apart from the remainder of the tract, or to capitalize the anticipated profits from a business then conducted on the tract condemned in arriving at fair market value. *Schuylkill Navigation Co. v. Thoburn,* 7 S & R 410 (1821); *Lieberman v. Philadelphia Redevelopment Authority,* 8 Pa. Commonwealth Ct. 366, 302 A. 2d 915 (1973); *Whitenight v. Department of Highways,* 1 Pa. Commonwealth Ct. 144, 273 A. 2d 752 (1971). "[A]s far as mineral deposits are concerned, the condemnee may not introduce evidence of the number of tons of minerals lost and then multiply that number by some dollar figure such as the market price or the royalty payment." *Werner v. Commonwealth, Department of Highways,* 432 Pa. 280, 284, 247 A. 2d 444, 447 (1968).[2]

*Sgarlat Estate v. Commonwealth,* 398 Pa. 406, 158 A. 2d 541, *cert. denied,* 364 U.S. 817 (1960), is a case at point. The condemnee there attempted to establish the value of his land—upon which had been conducted a gravel and sand quarrying operation before the condemnation—by projecting future profits or royalty

---

[2] *Werner* held that, although a condemnee cannot put before the jury the total tonnage of minerals lost and then multiply that figure by a price per ton of such minerals in order to compute the "profit loss" as a separate element of damages, he may establish the total mineral tonnage to assist the jury in realistically evaluating the fair market value of the realty as a whole. There is no question in the instant case that the valuation experts considered the unusually thick layer of topsoil covering condemnees' property in arriving at their estimation of the value of the land, but quite properly did not assign an independent value to this deposit. Significantly, in *Werner* as well as here, the profits lost could have been accurately determined because in each case a royalty agreement existed fixing the per ton value of the mineral deposits to be taken.

value of the remaining mineral deposits. In rejecting this evidence as an attempt to establish damages by a loss of "profits of business," the Court, per Justice BOK, cogently reasoned: ". . . The Commonwealth does not condemn an owner's business acumen or its results expressed in value. It condemns his property, which one man may use exceeding well, another ill, and a third not at all. The use of one's talents is a private, not a public matter. If we own part of the common earth, we risk having to return it to the common use, and what we may expect to get for it in compensation is the common value. We so admire industry and ingenuity that the obverse of the appellant's picture is easier to see fairly. If his fields contained diamonds and he never raised his hand to take them, he could not expect to be compensated after condemnation for all of his estimated diamonds at Tiffany prices. No more should the owner expect it who does make ado to realize them and sell them; he has done so while he owned them, but when the public needs his land for the general good, he may not hope to be paid thereafter for what he may no longer realize. All he can get is the value of his land as affected by an idea that may appeal to the general or average buyer." 398 Pa. at 409, 158 A. 2d at 543. *See also Scarle v. Lackawanna & Bloomsburg R. R. Co.,* 33 Pa. 57 (1859) ; *Whitenight v. Department of Highways, supra;* Snitzer, Pennsylvania Eminent Domain, §705(2)(iii)-4.1 (1965).

We find condemnees' remaining contention that the award of $72,000 is against the weight of the evidence to be equally without merit. In reviewing the grant of refusal of a new trial, this Court is limited to a determination of whether there has been a palpable abuse of discretion or an error of law. *Gentzel Corporation v. Borough of State College,* 13 Pa. Commonwealth Ct. 116, 318 A. 2d 415 (1974). In support of their burden in this respect, condemnees advance two arguments.

The first is that the ultimate award by the court below for their fee interest is $7,800 less than that awarded by the board of viewers. Although relevant, a discrepancy of less than 10% between the viewers' verdict and the lower court's award is hardly of controlling proportion. *See McConn v. Commonwealth, Department of Highways*, 431 Pa. 574, 246 A. 2d 677 (1968); *Mishkin v. Lancaster Redevelopment Authority*, 6 Pa. Commonwealth Ct. 97, 293 A. 2d 135 (1972).

Nor do we find condemnees' argument that the court's award varied widely from the fair market value testified to by the respective witnesses to be persuasive. The condemnee, Richard Edwards, Sr., testified to a fair-market value of $196,000 and his expert gave a value of $141,000, but both estimates include the condemnees' interest in the topsoil contract with David Jack. The Commonwealth's experts returned values of $55,026 and $59,700, respectively. As is often the case, the trial judge and the court en banc arrived at a fair market value between the estimates of both parties. We find this award to be supported by competent evidence, and hence it will not be disturbed on appeal. *See Morrissey v. Commonwealth, Department of Highways*, 440 Pa. 71, 269 A. 2d 866 (1970).

Order affirmed.