In re CONDEMNATION BY THE PENNSYLVANIA TURNPIKE COMMISSION OF 1.169 ACRES IN FEE SIMPLE, IN BIG BEAVER BOROUGH, BEAVER COUNTY, Commonwealth of Pennsylvania, for the Beaver Valley Expressway Project.

Lorraine Murray, Formerly
Lorraine Denes

v.

Pennsylvania Turnpike Commission,
Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 1999.
Decided Jan. 18, 2000.

Samuel P. Kamin, Pittsburgh, for appellant.

Michael J. Boyle, Pittsburgh, for appellee.

Before FRIEDMAN, J., LEADBETTER, J., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

The Pennsylvania Turnpike Commission (Condemnor) appeals from an order of the Court of Common Pleas of Beaver County (trial court) denying Condemnor's motion for post-trial relief which sought judgment notwithstanding the verdict and a new trial.

Lorraine Murray, formerly Lorraine Denes,[1] (Condemnee) owned and operated a vehicle repair and salvage shop (the business) in a one-story garage located on 1.169 acres of land (together with the business, the premises) in Beaver County. Condemnee held both a salvor's authorization and a state inspection license (together, Licenses) from the Commonwealth. In addition, Condemnee had a contract with Condemnor (Contract), which gave Condemnee the exclusive right to tow abandoned and disabled vehicles on a 30–mile stretch on the Pennsylvania Turnpike.

■ On January 18, 1990, acting under the Eminent Domain Code of 1964[2] (Code), Condemnor filed its declaration of taking against the premises, and possession was surrendered on June 13, 1990. In response to a petition presented by Condemnor, the trial court appointed a Board of View (Viewers) to assess the damages in the condemnation. Initially, the Viewers concluded that damages should not be measured under the Assembled Economic Unit Doctrine (AEUD) because "all or most of the machinery, equipment and inventory were removable without significant injury and that as an

---

1. At the time of the taking, Lorraine Denes and her husband Edward Denes owned and operated the premises. During this litigation, Edward Denes died, and, as surviving tenant by the entireties, Lorraine Denes became the sole owner of the premises. She has since remarried and is now Lorraine Murray.

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101–1–903.

economic unit they could be relocated and the business continued at a location which was available within a reasonable distance from the condemned premises."[3] (R.R. at 41a.) The Viewers further concluded that the fair market value of the premises before the taking was $110,000 and that the condemnation constituted a total taking.[4] (R.R. at 41a.) Both parties appealed to the trial court.[5]

One of the principal objections that Condemnee made to the Viewers' report was to the Viewers' refusal to apply the AEUD in reaching its just compensation award. Upon request of both parties, the trial court bifurcated the case, directing that the issue of the applicability of the AEUD be tried preliminarily by the court and the issue of damages be tried subsequently before the jury. After a two-day bench trial, the trial court filed an opinion and entered an order, dated July 8, 1994, directing that the measure of damages be based upon the application of the AEUD. (R.R. at 43a—59a.) Condemnor appealed and this court reversed in an unreported decision. *Pennsylvania Turnpike Commission v. Denes*, 663 A.2d 900 (No. 2704 C.D.1994, filed August 9, 1995); (R.R. at 60a—72a.) The Supreme Court reversed this court, thereby reinstating the order of the trial court directing that the issue of damages be based upon application of the AEUD. *Denes v. Pennsylvania Turnpike Commission*, 547 Pa. 152, 689 A.2d 219 (1997).

At the jury trial on the issue of damages, Condemnee presented the testimony of Charles Patterson, a licensed real estate broker, who testified that the highest and best use of the premises was to continue to use it as a commercial vehicle repair and salvage shop. (R.R. at 378a, 387a.) Patterson opined that the fair market value of the premises was $188,000. In arriving at this figure, Patterson valued the land under three appraisal methods—the cost approach, the market approach and the income approach—primarily relying upon the income approach. (R.R. at 388–92a.) Over objection, Patterson testified about the Licenses and Contract held by Condemnee and opined that they enhanced the value of the premises by $105,000. (R.R. at 386a.) Patterson also testified that the fair market value of the fixtures attached to the property was $7,600. (R.R. at 285a.) Thus, Patterson concluded that the total fair market value of the premises was $300,600. (R.R. at 385a, 398–99a.)

Condemnor presented the testimony of Francis Chiappetta, a certified real estate appraiser. Like Patterson, Chiappetta stated that the highest and best reasonable use of the premises was to continue to use it as a commercial vehicle repair and salvage shop. (R.R. at 624a.) However, Chiappetta opined that upon an inspection of the premises, considering the Licenses and Contract held by Condemnee, the fair market value of the premises was $100,836.[6] (R.R. at 623a.)

3. The AEUD allows compensation for certain machinery, equipment and fixtures when the nature of a condemnee's business requires a unique building for its operation and no other building within a reasonable distance is adaptable to the functioning of the business. *In re Condemnation by the Pennsylvania Turnpike Commission of 14.38 Acres in Fee Simple, in North Beaver Township, Lawrence County*, 548 Pa. 433, 698 A.2d 39 (1997) (hereinafter, *Bright*); *Singer v. Redevelopment Authority of City of Oil City*, 437 Pa. 55, 261 A.2d 594 (1970).

4. The Viewers awarded Condemnee $22,000, which reflected a pro tanto payment of $88,000 made by Condemnor to Condemnee.

5. Condemnor appealed the Viewers' award alleging that the Viewers' award was excessive. Upon motion by Condemnee, however, the trial court quashed Condemnor's appeal. (O.R., 1/27/91 Order.)

6. Condemnor argues in its brief that the Licenses and Contract have no transferable value because they could not be bought or sold. Therefore, although Chiappetta testified that he "considered" the Licenses and Contract in determining fair market value, we infer, based upon Condemnor's argument, that Chiappetta determined that the Licenses and Contract added nothing to the fair market value of the premises.

After hearing the evidence presented, the jury awarded Condemnee $230,000 as just compensation.[7] Both parties filed post-trial motions, and, on February 3, 1999, the trial court filed an opinion and issued an order denying Condemnee's motion for a new trial and Condemnor's motion for a new trial and judgment notwithstanding the verdict. (R.R. at 266a–81a.) Only Condemnor has appealed from that order.

■ On appeal,[8] Condemnor argues it is entitled to a new trial because the trial court erred by allowing Condemnee's expert to testify that the Licenses and Contract held by Condemnee enhanced the value of the premises by $105,000. We agree.

■ The Code provides for just compensation for the taking, injury or destruction of property. Section 601 of the Code, 26 P.S. § 1–601. Just compensation is measured as the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation, as unaffected thereby, and the fair market value of the property interest remaining immediately after the condemnation, as affected thereby. Section 602 of the Code, 26 P.S. § 1–602. Fair market value is the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, *inter alia*, the present use of the property and the highest and best reasonably available use. Section 603 of the Code, 26 P.S. § 1–603. It is a basic principle of condemnation litigation that a condemnee may

introduce evidence of particular items lost through the condemnation. *Boring v. Metropolitan Edison Co.*, 435 Pa. 513, 257 A.2d 565 (1969); *Werner v. Department of Highways*, 432 Pa. 280, 247 A.2d 444 (1968). Equally clear, however, is that a condemnee may not assign a specific value to those lost items. *Werner*.

In *Werner*, our supreme court held that, in determining just compensation for the taking of property subject to a lease giving the leasee the right to remove sand and gravel underlying the property, it was proper for the condmenee's expert to testify as to the amount of sand and gravel underlying the property. The court reasoned that, in determining fair market value, the jury must place itself in the position of a purchaser and that such a purchaser would certainly consider the amount of sand and gravel beneath the surface of the premises in arriving at a purchase price. The court recognized, however, that the expert should not multiply that amount by a dollar figure, such as market price or a royalty payment, to arrive at a specific value for the sand and gravel. The court elaborated:

> We are not quarreling with the time-honored rule that the jury may not multiply the number of tons by some dollar figure in order to value the minerals separately. This is error for two reasons. First, the minerals may not be valued separately apart from the remainder of the tract. Second, it is impossible to determine how much a ton of sand and gravel will be worth until it has been removed from the earth and pro-

---

7. In response to a special interrogatory, the jury deducted $4,200 from the award, and, on March 23, 1998, the trial court molded the award to $225,800 in just compensation. Condemnee then filed a post-trial motion with the trial court to mold the award to reflect delay damages. The trial court granted Condemnee's post-trial motion, making the final amount awarded $228,357.52. (R.R. at 268a–69a; Trial court op. at 3–4.)

8. Our scope of review of an order of a trial court denying a motion for post-trial relief is limited to whether the trial court abused its

discretion or committed an error of law. *Morgan Signs, Inc. v. Department of Transportation*, 723 A.2d 1096 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 742 A.2d 173 (1999); *Pikur Enterprises, Inc. v. Department of Transportation*, 163 Pa.Cmwlth. 251, 641 A.2d 11, *appeal denied sub nom. In re Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 1040, Section 2, a Limited Access Highway in the City of Pittsburgh*, 539 Pa. 657, 651 A.2d 543 (1994).

cessed for market. All we are saying is that a tract of land containing 500 tons of sand and gravel is much more valuable than a tract of land with five tons and the jury has the right to know more than that there is a sand and gravel deposit of unkown ·quantity below the surface.

*Werner*, 432 Pa. at 286–87, 247 A.2d at 448.

In the present case, Patterson testified that the fair market value of the premises before the taking was $188,000 and that the Licenses and Contract "enhanced" the fair market value of the premises by an additional $105,000. (R.R. at 386a.) In arriving at that figure, Patterson stated that the business generated an annual gross income for Condemnee between $291,000 and $345,000 a year over the five years prior to the taking.[9] (R.R. at 398a.) Patterson then described how he used those figures to arrive at his opinion on the fair market value of the Licenses and Contract:

I decided that the business itself could have an economic life of 15 years and someone could reasonably expect to earn $300,000 a year in gross income running the business as it was being currently run, with the licenses that were attached to the property. And that breaks down to about $25,000 a month in gross income. And if I take the same 15 year period that I have the license value, $105,000, that is about $7,000 a year or $600 a month and I felt that someone would be willing to pay about $600 a month to have the right to, if they were a good entrepreneur, to generate $25,-000 a month in income.

(R.R. at 398a.) As indicated in *Werner*, this testimony was improper for two reasons. First, Patterson clearly assigned a value to the Licenses and Contract held by Condemnee separate and apart from the remainder of the premises. Second, in assigning that separate value, Patterson determined the worth of the Licenses and Contract from the gross income of the business for the five year period prior to the taking. However, it is well settled that income flow evidence is inadmissible in determining the just compensation for property subject to condemnation. *Morgan Signs, Inc. v. Department of Transportation*, 723 A.2d 1096 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 742 A.2d 173, 1999 WL 631680 (No. 248 M.D. Alloc.1999, filed August 18, 1999); *Edwards v. Department of Environmental Resources*, 14 Pa.Cmwlth. 371, 322 A.2d 138 (1974). It has been stated numerous times that:

The Commonwealth does not condemn an owner's business acumen or its results expressed in value. It condemns his property, which one man may use exceeding well, another ill, and a third not at all. The use of one's talents is a private, not a public matter. If we own part of the common earth, we risk having to return it to the common use, and what we may expect to get for it in compensation is the common value. We so admire industry and ingenuity that the obverse of the appellant's picture is easier to see fairly. If his fields contained diamonds and he never raised his hand to take them, he could not expect to be compensated after condemnation for all of his estimated diamonds at Tiffany prices. No more should the owner expect it who does make ado to realize them and sell them: he has done so while he owned them, but when the public needs his land for the general good, he may not hope to be paid thereafter for what he may no longer realize. All he can get is the value of his land as affected by an idea that may appeal to the general or average buyer.

*Enterprises* (holding that tax returns are inadmissible unless they reflect actual value or have clear probative value).

---

9. Moreover, Condemnee's tax returns showing this gross income were admitted into evidence. (Trial court op. at 6.) The admission of the tax returns here was error. *See Pikur*

*Edwards* 322 A.2d at 139–40 (quoting *Sgarlat Estate v. Commonwealth of Pennsylvania,* 398 Pa. 406, 409, 158 A.2d 541, 543 (1960)).

We recognize that a qualified valuation expert may testify to any and all facts underlying his or her opinion on fair market value. *See* Section 705(1), 26 P.S. § 1–705(1). In this sense, Patterson clearly could comment on the possible "enhancement" value to the premises supplied by Condemnee's Licenses and Contract, and that a willing and informed buyer might anticipate obtaining the same. However, because there are too many variables that might impact on the worth of the Licenses and Contract, *see Werner, Sgarlat, Edwards,* Patterson's assignment of a specific dollar value to the Licenses

and Contract was improper, and the failure to strike such testimony constitutes reversible error here.[10]

Because of our disposition, we are not compelled to address Condemnor's remaining arguments. Nevertheless, we shall address some of those arguments briefly to avoid confusion at a second trial.[11]

Condemnor makes two arguments regarding the applicability of the AEUD to this case. First, Condemnor notes that Condemnee made an election of remedies pursuant to section 601A(b)(5) of the Code, added by section 8 of the Act of December 29, 1971, P.L. 640, 26 P.S. § 1–601A(b)(5), which states: "In lieu of damages under subsection (a) ... [a displaced person shall be entitled to] damages in an amount equal to the average annual net

---

10. In support of her position that Patterson's testimony was proper, Condemnee relies upon three cases dealing with liquor licenses. In *Redevelopment Authority for the City of Philadelphia v. Lieberman,* 461 Pa. 208, 336 A.2d 249 (1975), our supreme court held for the first time that a condemnee must be compensated for the loss in value to his liquor license which resulted from the condemnation of a retail liquor establishment in which the condemnee held a leasehold interest. Then in *1412 Spruce, Inc. v. Pennsylvania Liquor Control Bd.,* 504 Pa. 394, 474 A.2d 280 (1984), the court explained *Lieberman,* in holding that a liquor license did not constitute "property," susceptible to the execution process, stating that:

> The real question in the *Lieberman* case, as is indicated in the reference to a constitutional and statutory right to just compensation ... is *"what is the value of the business* of retail liquor sales given the fact that the business has a license to sell liquor...."? If the retail liquor establishment had no liquor license, it would be worth one figure; if it had a license, it would be worth more. But in any case, it is not the license which itself is an item of value, but rather the license *as it is applied to the business* which produces a value. This value is a projected income, a livelihood for the license holder, and if the business is condemned ... it is fundamental that the opportunity for business income, if taken away, must be compensated for.

*1412 Spruce, Inc.,* 504 Pa. at 399, 474 A.2d at 282 (emphasis in original). In *Redevelopment Authority of the County of Washington v. Sepe-*

*sy,* 107 Pa.Cmwlth. 227, 528 A.2d 287, *appeal denied,* 517 Pa. 601, 535 A.2d 1059 (1987), we applied *Lieberman* and held that a liquor license may be considered in determining the increased value of a restaurant owner's condemned business.

These cases do not support Condemnee's position. As stated, it was not improper for Patterson to testify about the existence of the Licenses and Contract. Indeed, both experts agreed that the highest and best reasonable use of the premises was to continue to use it as it was currently being used, as a commercial vehicle repair and salvage shop. Considering this use, it is likely that a potential purchaser, a role in which the jury members must place themselves (*see Werner*), would consider the possibility of obtaining those same licenses and contract and view this possibly as enhancing the value of the premises. The error, however, was Patterson's assignment of a specific dollar figure to the Licenses and Contract, using Condemnee's gross income. *See Sgarlat Estate.*

11. Two of these arguments need not be addressed because they go toward the admissibility of Patterson's testimony. Condemnor argues that Patterson impermissibly capitalized business profits in arriving at his opinion on the fair market value of the Licenses and Contract. Condemnor also argues that Patterson's testimony violated the "unit rule" by assigning a separate value to the Licenses and Contract. Our holding that it was improper for Patterson even to assign a separate figure to the Licenses and Contract disposes of these arguments as well.

earnings but not more than twenty thousand dollars...." Subsection (a) states: "Any displaced person shall be reimbursed for reasonable expenses incurred in moving himself and his family and for the removal, transportation, and reinstallation of personal property." 26 P.S. § 1–601A(a). In fact, on March 4, 1991, at the hearing before the Viewers, the parties stipulated that Condemnor paid Condemnee $20,000 under this section. (O.R., 3/4/91 Viewers Hearing Transcript at 6.) Condemnor now contends that this payment precluded recovery under the AEUD. Although the parties proceeded to engage in years of protracted litigation over the applicability of the AEUD to this case, Condemnor never raised this issue previously and, thus, has waived it.[12]

■ Relying on *In re Condemnation by the Pennsylvania Turnpike Commission of 14.38 Acres in Fee Simple, in North Beaver Township, Lawrence County*, 548 Pa. 433, 698 A.2d 39 (1997) (hereinafter, *Bright*), Condemnee also argues that a jury, not the trial judge, should have decided the question of the applicability of the AEUD. In *Bright*, the court held that, where a condemnee demands a jury trial, and there is conflicting evidence as to whether the condemnee is entitled to damages under the AEUD, the jury, not the judge, should decide whether such damages are recoverable. In other words, if a party demands a jury trial on all issues, the trial judge cannot then decide the applicability of the AEUD. That was not this case. Although *Bright* was decided during the litigation of this case and the parties did not benefit from its holding, nevertheless, because both parties here consented to the trial judge deciding the applicability of the AEUD, Condemnor

cannot now complain of the trial judge's authority to render that decision.

For all the above reasons set forth, we reverse and remand for a new trial.

## *O R D E R*

AND NOW, this 18th day of January, 2000, the order of the Court of Common Pleas of Beaver County, dated February 3, 1999, is reversed and this case is remanded for a new trial, in accordance with this opinion. Jurisdiction relinquished.

---

**12.** However, even if we were to address this issue, Condemnor could not prevail. Condemnee's election of remedies was made pursuant to section 601A of the Code, 26 P.S. § 1–601A, which allows for special damages to displaced persons for moving expenses. *See In re Condemnation by Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for State Route 0060, Section A01,* 720 A.2d 154 (Pa.Cmwlth.1998). The AEUD allows for compensation for machinery, fixtures and equipment forming part of the real estate. *See Bright; Singer.* Because damages for moving expenses are awarded *in addition* to just compensation for the taking of property under the AEUD, the $20,000 payment to Condemnee does not affect her right to recover damages under the AEUD.